# J. M. BASS *v.* WILLIAM NELMS ET AL.

1. INJUNCTION. *Release of errors in judgment.  Sect. 1047, Code 1871.*
   · Sect. 1047 of the Code of 1871 provides that, "when an injunction shall be granted to stay the execution of a judgment at law, in whole or in part, the issuance of such injunction shall operate as a release of all errors in the judgment, in the same manner as if the party had signed and sealed a release of such errors."  Under this section, the issuance of the injunction only operates as a release of such errors as might be assigned against the enjoined judgment, in this court, and not of matters *de hors* the record, — as, that the judgment was obtained by fraud.

2. SAME.  *Successive bills.  Splitting up cause of suit.*
   A defendant in a decree, having several grounds of objection against it, and having first enjoined its execution upon some of those grounds, is not permitted, after the dissolution of such injunction, to enjoin the execution of the decree upon the other grounds known to him at the time of filing the first bill; and if his second bill contains any ground not known to him at the time of filing the first, it must show that fact.  The rule that a party cannot split up his cause of suit, and litigate one part at one time and the other at a subsequent time, is especially applicable in suits for injunction against judgments and decrees.

3. CHANCERY.  *Pleading.  When bankrupt a necessary party.*
   By an adjudication of bankruptcy the bankrupt loses all interest in his land, except where he is entitled to a homestead exemption; and when the land is bound for the purchase-money thereof, he is only entitled to claim a homestead after the purchase-money has been paid, or to claim the surplus money over such payment; and, therefore, a decree in a suit to enforce the vendor's lien against the land of the bankrupt will not be disturbed because he was not made a party to the proceedings, where the land did not sell for enough to pay the purchase-money due thereon, the bankrupt, in such case, having no interest in the litigation.

4. ESTOPPEL.  *Fraud cannot be complained of after an adjustment.*
   A complainant is not entitled to relief against the fraudulent practices of the defendant, if, after the occurrence of the transactions charged to be fraudulent, he has adjusted the matters in dispute with his adversary, and made a contract of settlement thereof, which was ·fairly entered into.  In such case, the complainant is considered as having condoned the fraud charged.

5. CHANCERY.  *Practice.  Dismissal of bill and injunction at same time.*
   Sect. 1048 of the Code of 1871 provides that, "when an injunction shall be dissolved, the bill shall stand dismissed of course, unless sufficient cause is shown against its dismission at the next succeeding term of the court, and the clerk shall enter such dismission on the last day of the term."  It is not error, under this section, for the court to dismiss a bill at the same time an injunction is dissolved, where the parties had come to an issue and taken proof on both sides before the motion to dissolve was made, and where the only relief

that could be granted was a perpetuation of the injunction. In such case, the suit is regarded as disposed of on its merits, unless the complainant should apply for leave to amend his bill, or to take further proof, and to have the injunction reinstated: The object of the statute was to give the complainant an opportunity to make such application.

APPEAL from the Chancery Court of Tippah County.

Hon. A. B. FLY, Chancellor.

In 1862, J. M. Bass purchased of Nathaniel Ragan a small tract of land, paying part of the purchase-money in cash and giving his two promissory notes for the balance. Bass became a bankrupt, and in August, 1868, Ragan filed a bill against him and his assignee in bankruptcy, to enforce the vendor's lien for the purchase-money remaining unpaid. In September, 1879, Ragan obtained a decree for the sale of the land, but the sale was enjoined by Bass. Some time thereafter the injunction was dissolved and the land was sold, under the decree, to William Nelms. Nelms brought an action of ejectment to obtain possession of the land. He had also become the holder of one of the notes given by Bass to Ragan, and he brought an action thereon, claiming that there was a balance still due on it after applying as a credit thereon the price for which the land sold. In 1872, during the pendency of these actions, Nelms sold the land back to Bass, and made him a quitclaim deed thereto. At the same time, Bass executed a deed of trust to W. F. Tipler, as trustee for Nelms, to secure the payment of the purchase-money. Nelms then dismissed the actions at law against Bass. The latter made default in payment of the purchase-money to Nelms, and Tipler, the trustee, advertised the land for sale on the 23d of November, 1874. Bass then filed the bill in this suit against Nelms and Tipler, and obtained an injunction prohibiting the sale. The defendants answered; both sides took testimony, and, on the 15th of May, 1878, the injunction was dissolved and the bill dismissed. Thereupon the complainant appealed. The other facts of the case, necessary to be known, will be found in the opinion of the court.

*B. F. Worsham* and *Carter & Spight*, for the appellant.

1. The court erred in dismissing the bill at the time of dissolving the injunction.   Code 1871, sect. 1048 ; Hill. on Inj., sects. 139, 141, 145 ; *Drane* v. *Winslow*, 41 Miss. 319.

2. The relief asked for by the appellant is based upon two facts :  *first*, the fraud practised by Nelms in suing to enforce the vendor's lien in favor of Ragan, when the lien had been lost by the assignment of the notes ; and, *second*, his obtaining the decree by falsely representing that the appellant had been served with a summons.   As to the definition of fraud, see 1 Bouv. L. Dic. 590 ; 1 Story's Eq. Jur. 187.   As to the power of a court of chancery to relieve for fraud, see Story's Eq. Pl. 400.

3. The appellant was induced, by the fraudulent representations and threats of Nelms, to purchase the land in 1872, and give his notes and deed of trust for the purchase-money.   The contract of a person of weak understanding, who has not exercised his deliberate judgment, but has been imposed upon and circumvented by his adversary, will be held void in equity.   1 Story's Eq. Jur., sects. 236–238.   Nelms induced Bass, by fraudulent representations, to buy land which he did not own, legally or equitably ; and hence the transaction was void.   1 Story's Eq. Jur. 187, 191.   He knew the defects in his title, and fraudulently concealed them from Bass.   1 Story's Eq. Jur., sect. 207.

4. An injunction should not be dissolved unless the answer denies, explicitly and positively, the equities of the bill.   Hill. on Inj. 110, sect. 43.

5. Bass is not estopped to complain by having given the deed of trust and notes to Nelms.   Settlements of doubtful claims will not be upheld unless free from fraud and imposition.   2 Story's Eq. Jur. 1555.

*Falkner & Frederick,* for the appellees.

1. The bill was properly dismissed.   *Drane* v. *Winter*, 41 Miss. 517 ; *Simple* v. *McGatagan*, 10 Smed. & M. 98.

2. Bass was an unnecessary party to the suit by Ragan

to enforce the vendor's lien ; because, having been adjudicated a bankrupt, he had no interest in the land. His assignee was properly made a party defendant. Barb. on Parties, 449, 470, 471 ; 1 Ves. & Bea. 545 ; 10 Wheat. 384 ; Story's Eq. Pl. 231, 233, 237, 519.

3. The suing out, of the injunction against the execution of Ragan's decree was a release of all errors therein. *Thompson* v. *Munson*, 43 Miss. 179.

4. There was no fraud practised by Nelms in obtaining the decree in favor of Ragan, nor in any of his transactions in relation to the land ; but if his whole conduct in respect thereto had been fraudulent up to the time of the sale to Bass, in 1872, it cannot now be made the subject of complaint. Bass's contract of purchase, entered into with a full knowledge of all the facts charged to be fraudulent, was a waiver and condonation of such fraud. *Edwards* v. *Roberts*, 7 Smed. & M. 555 ; *Harrison* v. *Field*, 41 Miss. 712 ; 1 Story on Con., sect. 515 ; *Parsons* v. *Hughes*, 9 Paige, 591. A *bonâ fide* compromise of doubtful conflicting claims is a sufficient consideration to uphold a contract. *Pitkin* v. *Noyes*, 2 Am. L. Rev. 228 ; 1 Pars. on Con. 363 ; *Field* v. *Weir*, 28 Miss. 69 ; *Long* v. *Shackleford*, 25 Miss. 559.

SIMRALL, C. J., delivered the opinion of the court.

The questions necessary to be considered in this case are somewhat obscured by the large mass of matter in which they are encompassed.

The complainant relies upon a series of acts commenced in 1868, and terminating in 1872, with which Nelms, the defendant, is intimately connected, charged in his bill to have been conceived in fraud, and contrived to defraud him of the quarter-section of land, the subject of controversy.

Ragan sold the land to Bass in 1862, for a cash payment, and two instalments, of $255 each, at one and two years; represented by notes at ten per cent interest. It appears from an exhibit, that, in 1869, Ragan obtained a decree in

chancery against Bass and L. Ragan, his assignee in bankruptcy, for a sale of the land to pay the balance of the purchase-money. This decree is assailed by the complainant, because, as alleged, the summons was not served personally, nor was a copy left with his wife, as the return upon it recited; and for the further reason that Ragan did not own the notes, but had assigned them to other persons, and thereby the equity of the vendor was lost; that the suit was brought in Ragan's name as a mere device, to give the benefit of that lien to the assignees.

Under that decree, Nelms, the defendant, bought the land, and, instead of paying the money to the commissioner, presented the notes, and had entered upon them as a credit the amount of his bid.

The complainant further alleges that, by imposition, threats, and fraud, he was induced by Nelms, in 1872, to give the notes and trust-deed which Tipler, the trustee, is about to enforce by a sale of the land.

To the relief sought by the bill, the defendant Nelms interposes several matters in bar: —

First, that Bass, in 1870, filed a bill to enjoin the decree foreclosing the vendor's equity and to restrain a sale, in which he claimed that, at the time the decree was rendered, he had been declared a bankrupt, by reason whereof he had been absolved from the debt and lien. That injunction, on motion, was dissolved.

Nelms insists that filing the bill and obtaining the injunction released all errors in the decree, under the statute. Code 1871, sect. 1047. And, further, that Bass cannot in this suit bring forward matters to avoid that decree which were *then* known to him, and which were not *then* set up in opposition to it. He ought, also, *then* to have complained that he did not have notice of the suit, and that the return on the summons was false. He ought then to have preferred the objection that Ragan was a mere nominal complainant, and was asserting a lien for assignees who had none, and whose real

character as owners of the notes had been fraudulently concealed from the court.

The consequence of obtaining an injunction extends no further than to release errors which might be assigned to the judgment in the appellate tribunal, but does not preclude the party from assailing the judgment for matters *de hors* the record, — as, that the judgment was obtained by fraud.

A party will not be permitted to split up his cause of suit, and litigate one part at one time, and another in a subsequent litigation. Especially ought this rule to be enforced in suits of injunction against the execution of decrees and judgments. If there existed several reasons why the decree of 1869 should not have been enforced, it behooved Bass to have combined them all (*then known to him*) in the bill which he filed that year. He must then have had knowledge that the subpoena had not been left with his wife, and that the return was false. Whether he then knew that Ragan had prosecuted that suit for the benefit of the assignees of the notes, he neither affirms nor denies in the bill now before us. He ought in this bill to have explained on that point.

But was it necessary that he should have been a party to the foreclosure suit? The complainant alleged that he had been declared a bankrupt, and that L. Ragan had been appointed his assignee. The fourteenth section of the Bankrupt Law vests in the assignee of the bankrupt all the " personal and real estate," " and all property conveyed by the bankrupt in fraud of his creditors." As of the date of his application, the bankrupt is *divested* of all his estate, real and personal, and choses in action, except so much as may be exempt to him, and property held in trust and beneficially belonging to others. The title to the quarter-section of land in question, at the time this bill was filed, had passed out of Bass, and he had no interest in it, unless to claim an exempt homestead. But that claim, if it had been asserted, would have failed, because the debt was for the purchase-money. Evidently, Bass had fallen into the error that the adjudication that he was a

bankrupt absolved him from this debt. That was the distinct ground assumed in his bill filed in 1869. The utmost extent of his right in the land was to a homestead exemption after the payment of the purchase-money, or to any surplus after such payment. He does not now controvert the fact that he never discharged that debt in full, and that the notes which he gave to Nelms are for the balance of that debt.

It may be that the assignee in bankruptcy asserted no right to the land in the foreclosure suit, because there would be nothing left after that debt was made out of the land; or, if any thing, it would be covered by the homestead right; or, if that suit failed altogether, the land would be absorbed by the exemption.

But if Bass had satisfactorily proved that the foreclosure suit was conceived and prosecuted as a fraudulent device to set up a lien, when none really existed, in favor of the beneficial owners of the notes, and if he were not at all embarrassed in this litigation by a failure to set up in his injunction suit of 1868 all the objections (which then existed and were known to him) to the foreclosure decree and its execution, he has condoned the frauds and covin of which he complains in this suit, by the compromise arrangement which he made with Nelms in 1872.

It is entirely competent and meritorious for a party who has been seeking redress in the courts from the consequences of the fraudulent practices of his adversary to enter into negotiations and come to a settlement with him. Although he might succeed, by prosecuting the litigation, in obtaining full relief, yet if he agrees to abandon litigation, and comes upon terms of adjusting the matters in controversy, if the contract is *fairly* made, he is bound by it. Nor will he be permitted to reopen the matters of former difference, unless he can clearly and satisfactorily show that he was entrapped into the contract, by duress, or such fraudulent practices as will avoid it. *Field* v. *Weir*, 28 Miss. 69 ; *Edwards* v. *Roberts*, 7 Smed. & M. 555 ; *Hanson* v. *Field*, 41 Miss. 712.

The complainant fails to break the force of this contract of 1872. We think the weight of the testimony establishes the fact that Bass voluntarily, and with a full understanding of the subject, entered into it. Robinson, the county treasurer, was selected by the parties to write the papers. It would seem that the terms had been agreed upon before they came to his office. The amount to be paid by Bass was handed to him, stated on paper; he drew up the notes, deed of trust, and the quitclaim deed from Nelms to Bass. At first, Bass objected to that form of deed; but, on explanation by Robinson that it would pass whatever title Nelms had to the land, and that he claimed no other than such as he acquired by purchase under the decree of 1878, Bass became satisfied. The papers were duly executed, and the deeds lodged in the clerk's office for record. As Robinson understood the agreement, Nelms was to dismiss his suits — one to recover the land, the other the balance of the notes — and surrender his title. Bass was to give his notes for the balance of the debt, secured by a deed of trust on the lands.

Bass is proved to have been an illiterate man, but not of intellect so feeble as to be the easy victim of imposition. It has been proved that Bass and Nelms, throughout this protracted litigation, have been at enmity, and that Nelms had no influence over him.

But it is further insisted by the appellant that it was error to dismiss the bill, — that it ought to have been retained until the last day of the next succeeding term, under sect. 1048 of the Code. Commenting on the scope of the statute, in *Maury* v. *Smith*, 46 Miss. 83, the court said it was "intended to secure to a complainant an opportunity of amending his bill, or supporting it by proof," etc.

But where the motion to dissolve has been submitted long after the parties have come to an issue, and they have availed of full opportunity to take testimony, and have presented all the evidence that either party desired or could attain, and where the only relief sought, or that could be granted, would be to

perpetuate the injunction, the case, it seems to us, has been disposed of on its merits if the injunction is dissolved. The dismissal would follow as a matter of course, unless the complainant applied to have the cause retained to take further testimony, or for other good cause. Such, it seems to us, was the view of the court in *Drane* v. *Winter*, 41 Miss. 519. The statute was designed to give the complainant an opportunity to amend his case, or to prove it as stated in the bill, and to apply to reinstate the injunction. If that was not done, the bill would stand dismissed at the last day of the next term.

Bass made no suggestion that he desired to take more testimony, or make any improvement or addition to his case.

The decree is affirmed.